UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

David Stacy as Successor
in interest to the Conservator
Estate of David Stacy,
    Plaintiffs

    v.                                          Civil No. 07-cv-51-SM
                                               Opinion No. 2007 DNH 103

A. Rodman Johnson,
    Defendants

**O R D E R**

David Stacy brings suit against A. Rodman Johnson, a Texas attorney, seeking redress for alleged legal malpractice that occurred in the creation of a guardianship over him. Stacy asserts that Johnson, acting in concert with a New Hampshire attorney, pursued an unwarranted and unnecessary guardianship over him in Texas, despite an ongoing conflict of interest. Johnson moves to dismiss, arguing that the court lacks personal jurisdiction over him, and that venue in this district is improper. See FED. R. CIV. P. 12(b)(2) and 12(b)(3). Stacy objects. For the reasons set forth below, Johnson's motion to dismiss for lack of personal jurisdiction is granted.

**The Legal Standard**

When considering a motion to dismiss for lack of personal jurisdiction under FED. R. CIV. P. 12(b)(2), the court takes the

facts pleaded in the complaint as true, and construes them "in the light most congenial to the plaintiff's jurisdictional claim." Negrón-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 23 (1st Cir. 2007) (citing Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n., 142 F.3d 26, 34 (1st Cir. 1998)).  The court also considers uncontradicted facts put forth by the defendant, but does not "credit conclusory allegations or draw farfetched inferences." Id. (citations and quotation marks omitted).

**Background**

The relevant facts, as alleged in the amended complaint (document no. 9) are as follows.

In May of 2001, Stacy and his adoptive mother created an irrevocable trust for Stacy's benefit in exchange for Stacy's promise to create a voluntary conservatorship in New Hampshire and his naming Michel Brault as conservator.  A Petition for Conservatorship was filed in, and subsequently granted by, the Carroll County Probate Court.  Brault was appointed conservator, and Donald Wyatt was hired to serve as his counsel.  At the time he was retained as counsel to the conservatorship, Wyatt also represented Stacy individually, and had ongoing business relationships with Brault, about which Stacy was unaware.

In March of 2002, Stacy underwent surgery at a hospital in Texas, during which time Wyatt, Brault, and Stacy's estranged wife, Svetlana Stacy, successfully sought to impose a guardianship over Stacy and his estate in the New Hampshire Probate Court (Carroll County).  The three subsequently traveled to Texas to establish a guardianship in Texas as well, based upon the New Hampshire guardianship.  With Johnson as his sponsor, Wyatt sought pro hac vice admission to the Texas court, with the intent of establishing a Texas guardianship.  The motion for pro hac vice admission was denied, however, because the Texas court found that Wyatt's prior simultaneous representation of Stacy, Brault, and the conservatorship, disqualified him from participating in the guardianship case as counsel.

Wyatt and Johnson then entered into a written agreement under which Johnson agreed to pay Wyatt's fees as a "legal consultant" in matters relating to the Texas guardianship proceeding.  The agreement provided that Wyatt would perform legal research, prepare legal documents, and prepare witnesses to give testimony in connection with the guardianship effort, while Johnson served as counsel.

Brault resigned as conservator of the estate in 2003.  Deborah Stacy was appointed as his successor.  In 2005, Judge

James Patten of the Carroll County Probate Court imposed a surcharge against Brault of approximately $1,000,000, and ordered Wyatt to disgorge legal fees he had charged the conservator, presumably based upon finding disqualifying conflicts of interest.

Stacy now alleges that Johnson engaged in malpractice, to his detriment, by agreeing to pursue and pursuing a guardianship in Texas that he knew or should have known to be improper, and by entering into a professional relationship with Wyatt when Johnson knew or should have known that Wyatt was precluded from participating in the case due to conflicts of interest. Based on these allegations, Stacy filed suit in this court on February 22, 2007, asserting vicarious liability (Count I), breach of fiduciary duty (Count II), and malicious prosecution (Count III).

## Discussion

Johnson moves to dismiss the complaint for lack of personal jurisdiction over him. Stacy counters that the agreement between Wyatt and Johnson constituted a "joint venture," and this court may exercise personal jurisdiction over Johnson based upon his association with Wyatt, a joint venturer and a New Hampshire resident.

I.   <u>Personal Jurisdiction</u>

When a defendant challenges personal jurisdiction, the burden falls on the plaintiff "to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution." <u>Negrón-Torres</u>, 478 F.3d at 24.  Where, as here, the long-arm statute is coextensive with the constitutional limits of due process, the two inquiries become one, focusing solely on whether jurisdiction comports with due process.  <u>See</u> <u>id.</u>; <u>Computac, Inc. v. Dixie News Co.</u>, 124 N.H. 350, 355 (1983) (explaining that New Hampshire's long-arm statute is "coextensive with constitutional limitations").

Personal jurisdiction comes in two varieties: specific and general.  <u>See</u> <u>Negrón-Torres</u>, 478 F.3d at 24.  Key to both is the existence of "minimum contacts" between the nonresident defendant and the forum.  <u>Id.</u>

A.   <u>General Personal Jurisdiction</u>

A court may exercise general personal jurisdiction over a defendant when "'the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state.'"  <u>Negrón-Torres</u>, 478

5

F.3d at 25 (quoting <u>163 Pleasant St. Corp.</u>, 960 F.2d at 1088 (1st Cir. 1992)).

Stacy has failed to establish that Johnson maintains a continuous and systematic presence in New Hampshire. Nothing presented shows that Johnson maintains a place of business in the state, or is licensed to practice law here, or owns property or transacts any business here, or that he has ever appeared as an attorney in a New Hampshire court. Indeed, Johnson has not visited the state since 1978. Accordingly, the court lacks general personal jurisdiction over Johnson.

    B.   <u>Specific Personal Jurisdiction</u>

In contrast to general personal jurisdiction, specific personal jurisdiction exists "'where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.'" <u>Id.</u> at 24 (quoting <u>United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.</u>, 960 F.2d 1080, 1088-89 (1st Cir. 1992)). The Court of Appeals for this circuit has explained that in considering whether a plaintiff has alleged sufficient facts to support a finding of specific jurisdiction, the court "'divides the constitutional analysis into three categories: relatedness, purposeful availment, and reasonableness.'" <u>Id.</u> (quoting <u>Platten v. HG Berm. Exempted</u>

6

Ltd., 437 F.3d 118, 135 (1st Cir. 2006)).  "'[A]n affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction.'"  Negrón-Torres, 478 F.3d at 24-25 (quoting Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999)).  The reasonableness inquiry is considered in terms of certain "Gestalt factors."  Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995).

   The relatedness inquiry is "not an open door" and requires a "material connection" between the defendant and the forum.  Id. at 25.  A finding of relatedness requires that the plaintiff's action arises directly "out of the specific contacts between the defendant and the forum state."  Sawtelle, 70 F.3d at 1389.  Put differently, for a finding of relatedness, the plaintiff's claim must arise out of, or relate to the defendant's in-forum activities.  Id. (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994)).

   Stacy asserts that the legal consulting agreement between Wyatt and Johnson constituted a joint venture under New Hampshire law and, because this court has personal jurisdiction over one participant in the joint venture – Wyatt – this court also may exercise personal jurisdiction over any other member of the joint venture, that is, over Johnson.  That is, Stacy argues that the

existence of the joint venture agreement between Johnson, a Texas resident, and Wyatt, a New Hampshire resident, is itself sufficient to establish relatedness for purposes of the jurisdictional inquiry.

New Hampshire law defines a joint venture generally as "an association of two or more persons formed to carry out a single business enterprise for profit." Miami Subs Corp. v. Murray Family Trust, 142 N.H. 501, 508 (1997) (citing 46 Am. Jur. 2d Joint Ventures § 1 (1994)). The New Hampshire Supreme Court has further explained that a "joint proprietary interest and a right of mutual control over the subject-matter of the enterprise or over the property engaged therein is essential." Glaser v. Medford-Marlboro Knit Gaiter Co., 93 N.H. 95, 99 (1944). Moreover, although not dispositive, the New Hampshire Supreme Court has opined that "[w]hether there is an agreement between the parties to share losses is an important . . . test" to determine whether a relationship constitutes a joint venture. Lefebvre v. Waldstein, 101 N.H 451, 455 (1958).

Under the agreement between Johnson and Wyatt, Johnson assumed the exclusive responsibility to provide legal representation to Brault in pursuit of a Texas guardianship over Stacy, while Wyatt was to provide legal support services in

connection with that proceeding.  Specifically, the contract explained that Wyatt would provide

> . . . "legal assistant" services to the extent this [the guardianship] matter proceeds.  Subject to my [Johnson's] discretion and control, I request your assistance in legal research, preparation of witnesses, and the preparation of legal documents in furtherance of my clients' objectives.

Def.'s Mot. Dismiss, Ex. C.

Although both Johnson and Wyatt undoubtedly intended to benefit financially from the arrangement, it cannot be said that Johnson and Wyatt were carrying out a business enterprise, together, for profit.  Wyatt was to provide ancillary support services to Johnson, in connection with Johnson's legal representation, in Texas, of a specific client.  In return, Wyatt was to receive an hourly fee, to be paid on a monthly basis.  There were no arrangements for sharing of profits or losses, and no indicia of mutual control over the legal representation, or any common proprietary interest.  To the contrary, the agreement provided that all of Wyatt's work was to be "[s]ubject to [Johnson's] discretion and control."  Simply put, the arrangement between Johnson and Wyatt appears to be more like an independent contractor relationship than it does a joint venture.  Stacy's joint venture argument, thus, does little to advance his proposition that Johnson's allegedly improper conduct has a

sufficient nexus with New Hampshire to warrant this court's exercise of personal jurisdiction over Johnson. If there was a "joint venture" at all, its purposes, and activities nearly completely concerned, were directed to, and were carried out in Texas, not New Hampshire.

Stacy also argues that jurisdiction in New Hampshire is appropriate because all or substantially all of Wyatt's guardianship work took place while he was physically in New Hampshire, and because Johnson routinely sent his own bills to Wyatt's office here for payment by the conservatorship. But the allegedly improper conduct that forms the basis of Stacy's complaint – namely, the improper or unethical pursuit of a Texas guardianship over Stacy, and the formation of a relationship between Wyatt and Johnson, notwithstanding Wyatt's professional conflicts – all took place in Texas and all related to the Texas proceeding. While it is true that the Johnson's bills were paid by a New Hampshire conservatorship, from New Hampshire, the mere fact that some effects of the allegedly improper conduct were coincidentally felt in New Hampshire does not itself give rise to personal jurisdiction over Johnson in this state. See Sawtelle, 70 F.3d at 1390-91.

Although the court could end its inquiry here, see Negrón-Torres, 478 F.3d at 24-25 (all three elements of the personal jurisdiction test must be satisfied for a finding that jurisdiction is proper), the remaining two elements of the personal jurisdiction test merit a brief discussion.

The second prong of the specific personal jurisdiction test requires the court to consider whether the defendant's contacts with the forum state "'represent a purposeful availment of the privilege of conducting activities in the forum state.'" Sawtelle, 70 F.3d at 1389 (quoting 163 Pleasant St. Corp., 960 F.2d at 1089). Specifically, the court looks to whether the defendant "engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable." Id. at 1391 (quoting Rush v. Savchuk, 444 U.S. 320, 329 (1980)) (quotation marks omitted). "[T]he cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability." Id. (citing Ticketmaster, 26 F.3d at 207).

Stacy argues that Johnson purposefully directed his activities to New Hampshire by agreeing to represent a New Hampshire conservator, and then subsequently engaging Wyatt, a New Hampshire attorney, to perform work related to the conservatorship. The law is clear, however, that neither the

11

mere representation of an out-of-state client, nor the hiring of local counsel are sufficient to establish purposeful availment. See Sawtelle, 70 F.3d. at 1392.

Stacy relies on Johnson v. Shaines & McEachern, P.A., 835 F. Supp. 685 (D.N.H. 1993) in support of his proposition that Johnson is subject to jurisdiction in New Hampshire because of Wyatt's presence here.  In Johnson, the court applied the doctrine of partnership by estoppel, finding that a Massachusetts firm could be subjected to New Hampshire jurisdiction because the two firms had represented themselves as partners to the plaintiff.  Johnson, 835 F. Supp. at 689-90.  Moreover, the court found that the two firms had led the plaintiff to believe that both firms would be working in concert on his case, and that the plaintiff detrimentally relied on that representation.  Id. at 690-91.

Stacy's reliance on Johnson is misplaced.  For the reasons given above, it is plain that Johnson and Wyatt did not enter into a partnership arrangement, and nothing in the record suggests that either Johnson or Wyatt held themselves out to Brault as partners in New Hampshire, or that Brault ever relied on any such representation.  To the contrary, Brault undoubtedly understood that Johnson was retained in Texas to pursue the Texas

litigation.  And, unlike the plaintiff in <u>Johnson</u>, Stacy has not alleged that Brault or the conservatorship detrimentally relied upon any representation of the existence of a partnership between Johnson and Wyatt when his services were engaged.

Stacy also asserts that Johnson should have reasonably foreseen being subjected to New Hampshire jurisdiction because he submitted his bills to a New Hampshire conservator who was required to account to the New Hampshire Probate Court for expenditures made on Stacy's behalf.  Although the probate court can of course require Brault to appear in New Hampshire and justify his expenditures, as conservator, it is doubtful that Johnson, acting on his own behalf, would have to appear in a New Hampshire court in support of bills submitted to Brault.  Johnson represented the conservator only with respect to the Texas guardianship proceeding, which took place entirely in Texas, before a Texas court.  Johnson did not perform legal services in New Hampshire, and had no involvement in the Stacy conservancy. He performed work for the conservator, billed for that work, and, had he not been paid, he could have sued here or in Texas, but those circumstances do not subject him to suit here for the work done in Texas.  In light of these facts, it cannot be said that Johnson could have reasonably foreseen being subjected to personal jurisdiction in New Hampshire.

Because the facts alleged in the complaint fall short of establishing that Johnson voluntarily directed his conduct to New Hampshire, or that he could have reasonably foreseen that he would be subject to personal jurisdiction here, Stacy has failed to satisfy the purposeful availment element of the specific personal jurisdiction test.

The third and final element of the three-part specific personal jurisdiction inquiry asks whether exercising personal jurisdiction would be reasonable in light of various Gestalt factors.  See Sawtelle, 70 F.3d at 1394.  The court considers "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies."  Id. (quoting Burger King, 471 U.S. at 477).  A weak showing on relatedness and purposeful availment requires the defendant to show less in terms of unreasonableness to defeat jurisdiction, while a strong showing of reasonableness "may serve to fortify a borderline showing of relatedness and purposefulness."  Id.

Stacy asserts that New Hampshire has an interest in having this case litigated here because it involves the assets of a New Hampshire estate, while Johnson says his slight contacts with New Hampshire are overshadowed by his extensive contacts with Texas. Johnson notes that he is licensed to practice law in Texas, where he works as a solo practitioner, and generally represents Texas-based clients.  He does not routinely represent out-of-state clients, and does not regularly appear in courts outside of Texas.  Finally, and perhaps most persuasively, all of the alleged conduct giving rise to the allegations in this case occurred in Texas.  The allegedly improper guardianship proceeding was brought before a Texas court, and the allegedly improper agreement between Johnson and Wyatt was executed by Johnson in Texas, shortly after a Texas court denied Wyatt's motion for admission pro hac vice.

While the claims do have some slight and indirect connections with New Hampshire, the totality of circumstances and the nature of the events giving rise to Stacy's complaint simply do not support a reasonableness finding in favor of New Hampshire jurisdiction.

Because Stacy has failed to satisfy the relatedness and purposeful availment tests, and because the Gestalt factors weigh

heavily against adjudicating the case here, the court finds that it lacks specific personal jurisdiction over Johnson.

## Conclusion

As the court lacks personal jurisdiction, Johnson's motion to dismiss (document no. 11) is hereby granted.  Johnson's motion to dismiss for improper venue (document no. 12) is denied as moot.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

August 28, 2007

cc: Steven M. Latici, Esq.
    Andrew M. Schneiderman, Esq.
    David A. Grossbaum, Esq.
    Kenneth C. Bartholomew, Esq.